DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant City of North Ridgeville timely appeals the decision of the Elyria Municipal Court to dismiss the case against appellee Terrance Haggard because Haggard's right to a speedy trial had been denied.
 I.
Appellee Terrance Haggard was dining with his wife and their friends at BW-3 Restaurant in North Ridgeville late in the evening of July 17, 1997. Several men, including Charles Butterfield, Robert McFadden, and their friend Dunsmore, made lewd remarks to Haggard's wife during the evening. When Haggard saw that the remarks were upsetting his wife, he told the men to stop immediately. Sometime later the men left the restaurant and Haggard and his friend Shawn Bennett followed them out. Haggard began assaulting McFadden and Haggard witnessed Bennett assaulting Butterfield.
McFadden pressed charges in Elyria Municipal Court against Haggard, who was charged with assault, a first degree misdemeanor in violation of R.C. 2903.13(A). Haggard, who was not represented by counsel, did not contest the assault charge.[1] On December 18, 1997 Butterfield swore out a complaint of assault against Haggard, and Haggard was served with the citation on January 5, 1998.
On January 7, Haggard entered a plea of not guilty[2] and signed a "Waiver of Statutory Time Period." Once again, he was not represented by counsel. On March 3, in order to secure a bench trial, Haggard signed a form entitled "CONTINUANCE" which also stated, "Time requirement waived." On April 17, Haggard requested another continuance through his newly-retained attorney who needed time to prepare for trial. After yet another continuance, Haggard filed a motion to dismiss the current charge, based on the denial of his right to a speedy trial. After a hearing on the motion, the trial court dismissed the case on June 17, finding that Haggard's speedy trial rights had been denied.
The trial court concluded that Haggard had not been brought to trial within ninety days as required by R.C. 2945.71(B)(2). The court held that the ninety day speedy trial time began as of Haggard's arrest on the first charge in July 1997, not as of the date of service on the second charge on January 5, 1998. The court reasoned that because the facts needed to prosecute the second charge were known to the prosecution at the time of the first arrest, the speedy trial time began as of the arrest on the first charge.
The City of North Ridgeville appeals, assigning as error that the trial court (1) incorrectly held that the statutory speedy trial time began with the earlier service of the complaint for the McFadden assault, and (2) incorrectly applied the doctrine of collateral estoppel to the instant case. We will address the assignments of error in reverse order.
II. THE TRIAL COURT ERRED WHEN, IN EFFECT, IT RELIED ON THE DOCTRINE OF COLLATERAL ESTOPPEL TO DISMISS THE CASE AGAINST THE DEFENDANT BECAUSE COLLATERAL ESTOPPEL IS NOT APPLICABLE TO THE CIRCUMSTANCES OF DEFENDANT'S CASE AND DOES NOT BAR THE INSTANT PROSECUTION FOR ASSAULT.
 In its judgment entry, the trial court cited the decision of the United States Supreme Court in Ashe v. Swenson (1970), 397 U.S. 436, 25 L.Ed.2d 469, which considered the doctrine of collateral estoppel in a criminal prosecution. There, the appellant was alleged to have been one of several masked intruders who robbed six men who were playing poker. Ashe was charged and tried initially for the robbery of one victim, with a resulting jury acquittal based on "insufficient evidence." Id. at 439, 25 L.Ed.2d at 473. Then Ashe was charged with the robbery of a second victim. The Supreme Court found that collateral estoppel precluded the second trial for the robbery of the second victim. The Court explained that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 443, 25 L.Ed.2d at 475. The Supreme Court in Ashe concluded that a single issue had led to Ashe's acquittal in the first trial, that is, whether Ashe was one of the robbers at the poker game. Id. at 444-445, 25 L.Ed.2d at 476. Because an issue essential to sustain a conviction in the second trial had already been decided in Ashe's favor at the initial trial, the state was collaterally estopped from the second prosecution. Id.
"[A]n absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prioraction." (Emphasis added.) Goodson v. McDonough Power Equip.,Inc. (1983), 2 Ohio St.3d 193, 201. The United States Supreme Court has emphasized that the "taking of a guilty plea is not the same as an adjudication on the merits after full trial such as took place in Ashe v. Swenson." Ohio v. Johnson (1984),467 U.S. 493, 500, 81 L.Ed.2d 425, 434, fn. 9.
This Court has explained that Ashe holds that collateral estoppel in the criminal context bars "the state * * * from relitigating an issue decided in the defendant's favor by a valid and final judgment." State v. Zanders (1997), 121 Ohio App.3d 131,134, citing Ashe, 397 U.S. at 445, 25 L.Ed.2d at 475. "Collateral estoppel may be used to bar a later prosecution for a separate offense only where the government loses in the first proceeding." State v. Phillips (1995), 74 Ohio St.3d 72, 80, certiorari denied (1996), 517 U.S. ___, 134 L.Ed.2d 938.
In summary, for collateral estoppel to apply in a criminal case there must have been a full and fair litigation of the factual issue, that issue must have been essential to the judgment in the prior case, and the judgment based on that issue must have been resolved in the defendant's favor. In the instant case, it is clear that factual issues necessary to determine whether Haggard was guilty of assault of Butterfield could not have been litigated in a conviction based on a no contest or guilty plea with regard to the assault on McFadden. The two assaults were alleged to have taken place at the same time and place. However, the ultimate factual issues necessary to prove the elements of assault as to the two alleged victims are not the same. Furthermore, the judgment on the first charge against Haggard was not resolved in his favor. Thus the prosecution of the instant case is not barred by collateral estoppel.
However, even when collateral estoppel does not bar a second prosecution based on the same facts and circumstances as an earlier prosecution, in certain circumstances the state may be held to the statutory speedy trial time, beginning with the arrest or service on the initial charges. The trial court below concluded that such was the case here, and it found that Haggard's speedy trial time as to the second charge also began in July 1997. The court then concluded that Haggard had been denied his right to a speedy trial, and dismissed the case.
The City of North Ridgeville argues that although the two assault charges resulted from Haggard's behavior in July 1997, it was within the discretion of the prosecutor to file those charges together or separately. The prosecution elected to charge Haggard initially only with the assault on McFadden, as McFadden was the sole victim who decided to press charges against Haggard. The prosecution argues that when Butterfield later decided to press charges against Haggard, the statutory time for a speedy trial began to run as of the service of that complaint on January 5, 1998.
 R.C. 2945.71(B)(2) dictates that an accused charged with a misdemeanor of the first degree must be brought to trial within ninety days after his arrest or service of summons. The trial court relied on the opinion of the Ohio Supreme Court in State v. Adams (1989), 43 Ohio St.3d 67, which noted that, when new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge.
Id. at 68, quoting State v. Clay (1983), 9 Ohio App.3d 216. The defendant in Adams was charged initially with operating a vehicle with a breath alcohol content in excess of the legal limit, a violation of R.C. 4511.19(A)(3). Adams, 43 Ohio St.3d at 67. The prosecution later recommended that this charge be nolled, and the court agreed to this recommendation. Id. The state then charged the defendant with operating a vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1), based on "the same set of facts and circumstances." Id. The Ohio Supreme Court held that as to the second prosecution based on the exact same facts, the statutory time for a speedy trial begins to run on the day defendant was initially arrested. Id. at 68.
The trial court below determined that the charges as to the assaults on McFadden and Butterfield were "the same facts" and that these facts were fully known to the prosecution at the time of the initial charge as to the McFadden assault. This application of Adams to the instant case is inappropriate. Unlike the facts in Adams, the circumstances of the instant case involve separate victims, separate assaults, and a separate animus as to the assault of each victim. See State v. Bonham (Apr. 6, 1992), Clermont App. No. CA91-08-058, unreported. Although many of the facts pertinent to the prosecution of the first charge would also be essential to the prosecution of the second charge, the factual issues of each assault are not the same.
In its judgment entry, the trial court below also quotedState v. Baker (1997), 78 Ohio St.3d 108:
 In issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment.
Id. at the syllabus. The Ohio Supreme Court's use of the disjunctive "or" is significant. In the instant case, the prosecution admittedly knew of the facts concerning the assault on Butterfield at the time the McFadden charge was filed. Thus, the second prosecution would not be covered by the second exception permitted by Baker. However, it cannot be said that the facts as to the alleged assault against Butterfield are the same as the facts relating to the alleged assault of McFadden. Thus, we conclude that the first speedy trial exception permitted by Baker
is applicable here, and therefore we find that the January 5, 1998 service on the second charge commenced the ninety day time for a speedy trial, pursuant to R.C. 2945.71(B)(2).
We find appellant's second assignment of error to be well-taken.
III. THE TRIAL [COURT] ERRED WHEN IT RULED THAT THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED AS DEFENDANT HAS TWICE SIGNED A KNOWING AND VOLUNTARY WAIVER OF HIS STATUTORY TIME PERIOD. THE 90 DAY TIME PERIOD, WHICH MAY BE WAIVED, FOR BRINGING A DEFENDANT TO TRIAL BEGINS WHEN THE DEFENDANT IS ARRESTED OR SERVED. DEFENDANT EXECUTED TWO KNOWING AND VOLUNTARY WAIVERS OF STATUTORY TIME IN WHICH TO COME TO TRIAL.
 Although more than ninety days had elapsed from service of the complaint on January 5 to May 18 when Haggard filed his motion to dismiss, Haggard had agreed to several continuances and signed several waivers, which tolled the running of speedy trial time, pursuant to R.C. 2945.72. It is well established that a defendant may waive his statutory speedy trial time. State v. King (1994), 70 Ohio St.3d 158, 160. In order for the waiver of this fundamental right to be effective, it must be knowing and voluntary. Id. In his motion to dismiss, Haggard claimed that even if his speedy trial time began on January 5, 1998, that time had elapsed prior to his filing the motion to dismiss because his January 7 and March 3 waivers of the statutory speedy trial time were neither knowing nor voluntary.
The trial court, having decided that Haggard's speedy trial time had already elapsed prior to the signing of the waivers, did not actually determine whether or not these waivers were knowing and voluntary. If either or both of these waivers were valid, this would account for at least forty-five days and at most ninety-nine days of the one hundred thirty three days which had elapsed between January 5 and May 18. Given our decision today, such a factual determination is necessary to decide whether Haggard's speedy trial right was denied.
Having decided that the trial court assigned an incorrect starting date for the speedy trial period, we remand this cause to the trial court for further consideration in keeping with our decision today, including a factual determination about the validity of Haggard's waivers of his speedy trial time.
Judgment reversed and cause remanded.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).
Costs taxed to Appellee.
Exceptions.
WILLIAM R. BAIRD
FOR THE COURT SLABY, J.
CARR, J.
CONCUR
[1] In his brief to the trial court in support of his motion to dismiss, Haggard claimed that he entered a no contest plea as to this charge on July 23, 1997. He repeated this claim in his appellate brief. However, at the hearing on the motion to dismiss, Haggard was asked both by his own attorney and by the prosecuting attorney about the plea entered in regard to McFadden assault. Defense counsel asked Haggared, "Do you recall what that plea was?" Haggard responded, "Guilty." The following exchange took place between the prosecutor and Haggard:
 "Q. And on the assault charge, what was the result? Did you go to trial on that, or did you plead?
"A. For?
"Q. McFadden.
"A. I just pled guilty. Pled guilty."
This testimony was not challenged, although Haggard relies on the "no contest" plea in his argument to this Court. The trial court, in its judgment entry, found that Haggard had pled no contest to this charge. In the record transmitted to this Court, there is no other evidence of the plea actually entered by Haggard, except his own testimony at the hearing on the motion to dismiss.
[2] The journal entry, dated January 7, 1998, indicates a plea of "NOT GUILTY" but the journal entry is not signed, either by Haggard or by the judge. It also notes that a pretrial has been scheduled for March 3, 1998, the date of the second waiver signed by Haggard.